# **Exhibit A**

Transcript of arraignment and bail hearing in
in United States v. Lavidas, 19 Cr. 716 (DLC)

Jai1lava

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                            19 Cr. 716 (DLC)

GEORGIOS NIKAS, TELEMAQUE
LAVIDAS,

                Defendants.               Arraignment/Conference

------------------------------x
                                          New York, N.Y.
                                          October 18, 2019
                                          3:19 p.m.

Before:

                    HON. DENISE COTE,

                                          District Judge


                         APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
BY:  RICHARD A. COOPER
     Assistant United States Attorney

REED SMITH
     Attorneys for Defendant
BY:  JENNIFER L. ACHILLES, ESQ.
     HERNAN GONZALEZ MONETA, ESQ.


ALSO PRESENT:   FRANCESCA A. PIPERATO, Pretrial Services Officer
                LISA CHAN, Pretrial Services Officer
```

Jai1lava

          (Case called)

          THE DEPUTY CLERK:  Is the government ready to proceed?

          MR. COOPER:  Yes.  Good afternoon, your Honor.  Richard Cooper for the government.

          THE DEPUTY CLERK:  For the defendant Lavidas, are you ready to proceed?

          MS. ACHILLES:  Yes.  Jennifer Achilles on behalf of the defendant, Telemaque Lavidas.

          THE DEPUTY CLERK:  And who else is with you at counsel table?

          MS. ACHILLES:  I'm joined here by my colleague Hernan Gonzalez.

          THE COURT:  Welcome, everyone.

          This is an initial appearance in this case.

          Has the defendant appeared before a magistrate judge and been advised of his rights yet?

          MR. COOPER:  No, your Honor.

          THE COURT:  Thank you.

          Please stand, Mr. Lavidas.

          You have the right to remain silent.  You are not required to make any statements.  Anything you do say can be used against you.  Even if you have made any statements to the authorities, you need not make any further statements.  Do you understand?

          THE DEFENDANT:  Yes.

Jaillava

1    THE COURT:  You have the right to be represented by
2    counsel during this court proceeding and any future court
3    proceedings and any time you are questioned by authorities.  If
4    you cannot afford an attorney, I will appoint an attorney to
5    represent you.  Do you understand that?
6    THE DEFENDANT:  Yes.
7    THE COURT:  Let me ask, is it Ms. Achilles?
8    MS. ACHILLES:  Yes, your Honor.
9    THE COURT:  Have you received a copy of the
10   indictment?
11   MS. ACHILLES:  Yes, I have.
12   THE COURT:  Have you shared it with your client?
13   MS. ACHILLES:  Yes.
14   THE COURT:  Let me ask you, Mr. Lavidas, have you
15   received a copy of the indictment?
16   MS. ACHILLES:  I have the only copy.
17   THE COURT:  Okay.  Can you give it to your client,
18   please.
19   Mr. Lavidas, do you wish me to read it to you?
20   (Defendant conferring with his counsel)
21   THE DEFENDANT:  We went over it together.
22   THE COURT:  I know.  Would you like me to read the
23   indictment to you out loud in open court?
24   THE DEFENDANT:  No.
25   THE COURT:  How do you plead, guilty or not guilty?

Jaillava

1    THE DEFENDANT: Not guilty.

2    THE COURT: You may be seated.

3    I'll take a report from the government.

4    MR. COOPER: Yes, your Honor. The indictment, 19 Cr. 716, was returned under seal by the grand jury last Monday, October 7th. The defendant was arrested this morning at approximately 6 a.m. and the indictment was unsealed this morning as well. No time has yet run off of the speedy trial clock.

In terms of the indictment, your Honor, the defendant is charged in nine counts, the first nine counts of a larger indictment. The defendant is charged in connection with an insider trading scheme relating to insider trading in the securities of a company named Ariad Pharmaceuticals, Inc. The allegations are laid out in the complaint.

I should also mention there's a second defendant on the indictment as well, Georgios Nikas, who was not arrested this morning, who we believe to be located in Greece currently.

In terms of what discovery consists of in this case, your Honor, there are a number of categories that I can set out for the Court. I've already discussed this with defense counsel to apprise her of the general nature of the categories of discovery, but for the Court's benefit -- sorry, your Honor. For the Court's benefit, discovery consists of securities trading records relating to individuals who traded in the

Jaillava

1  securities of Ariad as part of this scheme; phone records both
2  of the defendant and of other individuals who were involved;
3  emails.  There were search warrants as well, your Honor,
4  including a search warrant on an email account of the
5  defendant, and a search warrant for the apartment where the
6  defendant was staying when he was arrested this morning.  The
7  government also obtained and seized, pursuant to a search
8  warrant, the defendant's telephone, so that search warrant as
9  well as the fruits of the searches of the email, the email
10 account, the telephone, and the premises, the fruits of those
11 warrants will also be produced.  And the final category is
12 corporate documents from the victim company here, Ariad.  Those
13 are the general categories of discovery.  Given the varied
14 nature of it all, the government is going to start making
15 rolling productions next week, and we would request four weeks
16 to complete discovery of those materials.
17          We had also --
18          THE COURT:  So that's November 15 for discovery.
19          MR. COOPER:  Yes, your Honor.
20          THE COURT:  Was there a postarrest statement?
21          MR. COOPER:  I don't believe so, your Honor.
22          THE COURT:  Thank you.
23          MR. COOPER:  The other piece I had, your Honor, is, we
24 had discussed potential trial dates with defense counsel.  I
25 didn't know if the Court wanted to take that up now or at

Jai1lava

1   another time.
2            THE COURT:  No.  How long do you expect a trial to
3   last?
4            MR. COOPER:  Approximately two weeks, your Honor.
5            THE COURT:  And what period of time were you looking
6   at for the trial?
7            MR. COOPER:  We had been talking about a trial date
8   over the summer, perhaps in late July or early August, if
9   that's available on the Court's calendar.
10           THE COURT:  Shall we say July 20th?
11           MR. COOPER:  That's fine for the government, your
12  Honor.  Thank you.
13           THE COURT:  And for motions, shall we say any motions
14  will be due April 17, with opposition due April 24.  And if the
15  defendant wishes to bring motions in advance of that schedule,
16  just write me a letter; otherwise, motions will be due
17  April 17.
18           Any objection to exclusion of time until our trial
19  date of July 20th?
20           MS. ACHILLES:  No, your Honor.
21           THE COURT:  I'm going to exclude time from today until
22  July 20th, pursuant to Title 18 United States Code Section
23  3161(h)(7)(A).  It will allow for the government to produce
24  discovery, for defense counsel and the defendant to review
25  those discovery materials.  If the defendant wishes to enter a

Jai1lava

plea of guilty, it will give him an opportunity, through his counsel, to negotiate the terms of that with the government. Alternatively, if the defendant wishes to proceed to trial, it will permit his counsel to make motions, to give me time to resolve those motions, hold a hearing if necessary, and give everyone an opportunity to prepare for trial.

So let me advise you, Mr. Lavidas, that this trial date I've just set is firm. If you need counsel to be appointed to represent you because you don't have sufficient funds to continue to pay your attorney or if you wish to retain a different lawyer, you should do so promptly, because this trial date is not going to move. Do you understand that?

THE DEFENDANT: I do.

THE COURT: Okay. Let's talk about bail.

MR. COOPER: Yes, your Honor. The government is seeking detention here.

THE COURT: Okay.

MR. COOPER: Would the Court like to hear from the government first?

THE COURT: Sure.

MR. COOPER: So we move for detention based on risk of flight. A couple of factors for the Court's consideration.

First, while the defendant is a US citizen, his wife, we understand, or believe, is not. She has a green card. He does have a young child who we understand is a US citizen. But

Jaillava

in any event, the defendant's travel pattern shows that he spends, or at least in recent times has spent, more time outside of the country than inside of the country.  The pretrial report notes I believe it's approximately ten international trips in the last year, and from what the government has been able to tell, in calendar year 2019, it appears the defendant has spent as much time, if not more, outside of the United States as he has inside the United States.  So that gives us significant concern.

I believe the agents have his -- or pretrial, someone has his US passport, but just before the proceedings started, I was advised that during the search of the residence where the defendant was arrested this morning, agents found what appears it be a French ID card, and that makes sense, given that he reported the location of his employer to pretrial as being in Paris, France.  Another cause for concern for the government.

The second factor -- and this interacts with the first one -- is, based on the investigation -- and I'll get to a few of the facts in a moment -- it appears that the defendant has access to considerable wealth outside of the United States. For one, the defendant's father is a prominent and wealthy Greek national who we believe currently is in Athens.  He's a chairman and CEO of a pharmaceutical company there.  And your Honor, he was a member of the board of directors of Ariad Pharmaceuticals during the course of the charged conspiracy.

Jaillava

As the indictment alleges, he is the one who provided the company's material nonpublic information to his son, the defendant, who then passed that material nonpublic information to the co-defendant George Nikas, who traded based on that information and made millions of dollars.

So on the co-defendant, your Honor, George Nikas, as I mentioned earlier, we believe he's currently in Greece. The indictment alleges that on the Ariad securities trades alone, Mr. Nikas made millions of dollars. The indictment also charges over 20 additional counts against Mr. Nikas alone for a separate insider trading/corporate acquisition scheme from which he made significant proceeds.

Now Greece does not extradite its nationals, we have been advised by the Office of International Affairs at the Department of Justice. Mr. Nikas we understand is quite wealthy. He owns a New York City apartment where the defendant was staying when he was arrested. Our internet research, as of this morning -- and I don't know if this is accurate, but it indicates that the apartment was purchased for approximately $6 million a few years back by Mr. Nikas. So the fact that the defendant was staying at that apartment as of this morning, which is a few years after the end of the Ariad charged insider trading conspiracy, suggests that there is an active, at a minimum, social relationship between the defendant and Mr. Nikas. Mr. Nikas has every interest in assisting the

Jaillava

defendant in fleeing the Court's jurisdiction, and it appears that Mr. Nikas has as well the wealth to assist the defendant in doing so.

I should note also, based on our records, it appears that Mr. Nikas had been in the United States, he owned a chain of Greek restaurants here, as well as business interests in Europe, and Mr. Nikas left the United States approximately a year ago, hasn't been back since.

The government's investigation into this and related conduct has been ongoing for some number of years.

So that brings me to the search that was conducted this morning. During the search, agents found two luxury watches, one that we understand belongs to the defendant and one to the defendant's wife, which, again, one was a Breguet watch, the second was a Rolex, that appear to be worth, at a minimum, tens of thousands of dollars. Again, a suggestion of somebody who has access to significant wealth.

The fundamental concern here, your Honor, is that the defendant will flee to Greece. Now he's a United States citizen, but again, in consultation with the Office of International Affairs, we understand that somebody who has Greek parents, as the defendant does, can acquire Greek citizenship. And Greece does not extradite its own nationals. So when we take that factor combined with the defendant's ongoing and close relationship to his co-defendant, George

Jaillava

Nikas, who has wealth, as well as a substantial amount of international travel, which suggests that New York isn't his home base of operations but is a transitory place where he does maintain an apartment but nonetheless spends more time outside the US compared to inside the United States, we believe that all that suggests that there's a risk of flight such that no conditions can reasonably assure his continued appearance in the court.

Unless your Honor has further questions, that's the crux of our argument.

THE COURT: Thank you.

MR. COOPER: Thank you, your Honor.

MS. ACHILLES: Good afternoon.

We respectfully request that the defendant be released on bond. Although the defendant certainly understands the seriousness of the charges being brought against him, he's not a danger to society and he's not a flight risk.

Again, the family residence on the Upper East Side –– and the reason why he wasn't there this morning, at the time of his arrest, is because his sister, who is in the courtroom today, was staying there. Mr. Lavidas ––

THE COURT: I'm sorry. His sister was staying in his own home?

MS. ACHILLES: That's right. It's a family residence.

THE COURT: So he couldn't stay? I'm just trying to

Jaillava

1       understand what you're referring to.
2                MS. ACHILLES:  That's exactly what I'm saying.
3       Mr. Lavidas and his wife, who's also in the courtroom, they
4       have a young child, and so they -- because there were two
5       apartments available, that's why he was not staying in his own
6       family residence in the Upper East Side, because his sister was
7       staying there with her boyfriend.  And so Mr. Lavidas and his
8       wife and young child, who's 14 months old and up very early and
9       very noisy, stayed at a separate residence.
10               My point being that he does have somewhere to stay.
11      He does have a family residence to stay if he is released on
12      bond.  It's not as if he has nowhere to go.
13               And to address what the prosecutor said about his wife
14      having a green card, her green card would allow her to stay
15      here in the United States with Mr. Lavidas and also their young
16      child, who is a US citizen, as the prosecutor mentioned.  His
17      wife is also pregnant with their second child.  They have --
18      they, and his sister, who is here in the courtroom today, and
19      his second sister are also US citizens and also residents of
20      New York City.  And they live here, and at times they stay at
21      the family residence on the Upper East Side.  It is possible
22      for all of them to stay there together and that's what they
23      would intend to do if, as pretrial has recommended, my client
24      would be released on bond today.
25               So as I mentioned, his sisters reside here.  One of

Jaillava

them is here today and very willing, ready, and able to co-sign a bond on his behalf. And she's a New York resident as well.

We certainly don't believe that the recommendations that pretrial has recommended would result in him fleeing the country. And we do consent to location monitoring and all of the other conditions that have been recommended by pretrial, including having his travel restricted to the S.D.N.Y. and E.D.N.Y. jurisdictions, supervision as directed by pretrial services, surrendering all travel documents, making no new applications, location monitoring as mentioned, and no contact with the co-defendant, witnesses, or victims unless in the presence of counsel. We consent to all of those. And there is someone here willing to co-sign a bond on Mr. Lavidas's behalf.

So we respectfully request that notwithstanding -- and he does understand the gravity of the charges being alleged against him. That due to the fact that he is not a threat to society and due to the fact that he has substantial ties here in New York, in the jurisdiction, that would keep him here, including one who can co-sign a bond on his behalf, that he be allowed to take this time, while we look through the criminal case until the trial, at his Upper East Side family residence.

THE COURT: Thank you.

And I should have put on the record that we have a pretrial services report, and I believe it's clear now that it has been distributed to counsel and it's dated with today's

Jaillava

date, October 18th. It's four pages in length. And it does recommend release on conditions described on that fourth page.

Give me just one second here.

So I am to look at the factors set forth in Section 3142(g). One is the nature and circumstances of the crime charged. This has been described as an insider trading charge. The weight of the evidence, the government hasn't described that in any detail, but it has listed a variety of pieces of information that it has amassed, including trading and telephone records. The history and characteristics of the defendant, including family ties, employment, community ties, and past conduct are the third factor I'm supposed to look at. Here, the defendant has ties to this country and ties abroad, including to Greece, which does not have an extradition treaty with us. I believe he has no current ongoing employment in this country, as I understand it, from the pretrial services report. His employment is with a company located in France.

In terms of past conduct, I don't believe he has any criminal history record. Nobody's touched on that, but I'm going to assume he doesn't.

In terms of community ties, he has family members residing here in this city.

The nature and seriousness of the offense and the danger to the community is the fourth issue, and I don't find that there's any substantial danger to the community as

Jaillava

1  described to me this afternoon.

2         The burden I believe is on the government to show by a
3  preponderance of the evidence that the defendant poses a risk
4  of flight and that that risk can't be adequately addressed
5  through conditions of release.  I am going to detain the
6  defendant for now, but without prejudice to the defendant
7  putting together a bail package that is substantial.  I need to
8  understand that people who really would be living in this
9  country and not have the opportunity to really live abroad but
10 who have strong connections to this country have put up, in
11 terms of their own circumstances financially, something
12 substantial that would be at risk if the defendant fled.  I
13 have to understand that the defendant has a significant
14 connection to these individuals such that they would hold moral
15 suasion over him.  I'd have to understand that any financial
16 loss that these people experienced could not be easily managed
17 by funds coming to them from outside.  I am persuaded that the
18 defendant has places to flee to outside the country, including
19 Greece.  I understand that the defendant can't be extradited
20 from Greece.  That's not in dispute.

21         MS. ACHILLES:  Yes.  I'm so sorry to interrupt, but
22 that is in dispute.

23         THE COURT:  I didn't hear you say anything about that.

24         MS. ACHILLES:  Yes.  Well, there's no extradition, but
25 I heard the prosecutor say, and my understanding is as well,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Jaillava

that Greece doesn't extradite its own nationals. But Mr. Lavidas is not a national of Greece. He's a US citizen, and there would be extradition of US citizens. There is extradition of US citizens. That was the first thing I wanted to correct.

And then the second thing that I wanted to correct the record regarding was his employment. Although the company that employs Mr. Lavidas is headquartered in France, his business involves international travel and significant business activities in New York.

THE COURT: Okay. So again, I'm going to detain the defendant without prejudice to a renewed application for bail on a more substantial showing. Actually, this is the government's statement about extradition: The government described the defendant's father as a Greek citizen and a wealthy member of society, and the expectation is that it would not be difficult for the defendant to obtain Greek citizenship as a result. Now that may all end up being in dispute, and you can make a further showing with respect to that, both the government and defense counsel can educate me more about that process and likelihood and the time frames that it would take to accomplish that.

And so again, the decision I'm making today is without prejudice to a renewed application. I don't want the defendant to make a renewed application, however, without giving

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Jai1lava

1 forewarning to the government so that the parties have an
2 opportunity to look at the circumstances and discuss it with
3 each other.  There may be consent, as far as I know, that would
4 obviate the need for a further court proceeding.
5             MS. ACHILLES:  Thank you, your Honor.
6             THE COURT:  Good.
7             So Mr. Cooper, is there anything else we need to do?
8             MR. COOPER:  I don't believe so.  Thank you, your
9 Honor.
10            THE COURT:  And Ms. Achilles, anything further we need
11 to do?
12            MS. ACHILLES:  No, your Honor.
13            THE COURT:  Thank you, all.
14            MR. COOPER:  Thank you.
15            THE DEPUTY CLERK:  All rise.
16                              o0o
17
18
19
20
21
22
23
24
25